A07A0507. AUSTIN v. THE STATE.
(648 SE2d 414)

ELLINGTON, Judge.

A Houston County jury found Shon Robert Austin guilty of false imprisonment, OCGA § 16-5-41; kidnapping, OCGA § 16-5-40; and battery, OCGA § 16-5-23.1. Austin appeals pro se from the order denying his motion for new trial, challenging, among other things, the sufficiency of the evidence, the admission of certain evidence, the conduct of the prosecutor, and the effectiveness of his trial counsel. Finding no error, we affirm.

---

Viewed in the light most favorable to the jury's verdict,[1] the record reveals the following relevant evidence. On July 31, 2005, a police officer arrested Austin on domestic violence charges. Austin had beaten his 18-year-old, mentally disabled, live-in girlfriend, bruising her nose. As a result of the charges, the court issued a "no contact" bond, directing Austin to stay away "absolutely, directly or indirectly, by person and telephone, from the person, home and job of [the victim]."

During the late evening of August 29, 2005, Austin spoke on the telephone with the victim's landlord's daughter. During the lengthy conversation, the daughter discovered that Austin was still living with the victim despite the no-contact bond. Austin complained to the daughter that he was upset that the victim had been going out on dates and staying out late and that she was not appreciative of the clothes he bought her. But he said he could not leave because "the money was too good." Austin had been acting as the victim's "payee," receiving and cashing her disability income checks. During the conversation, Austin called the victim his "slave," said he feared losing control of her, and said he was going to "teach her a lesson" by beating her with an extension cord. The daughter, concerned that Austin would physically harm the victim, called 911 and told the police that Austin, who was subject to a "no contact" bond, had threatened to beat the victim with an extension cord.

During the morning of August 30, 2005, several police officers responded to the victim's home on an "endangered person" call. The officers understood, based on the call, that Austin had threatened the victim and that he was forbidden by the court order from being with her. They also believed, based on reports from neighbors and the presence of Austin's pickup truck in the driveway, that Austin and the victim were both inside the house.

The officers knocked at the front door, but, when no one answered, they entered through the rear door with a key provided by the landlord. Once inside the home, the police found Austin and the victim hiding in a closet. Austin was clothed, but the victim was nude. The victim was upset and confused, her lip was bruised, and her wrists were red. The police arrested Austin for violating the no-contact bond.

The victim told the police, and also testified at trial, that Austin took away her clothing, punched her in the face, and handcuffed her to the bathroom door all night. She described how, when the police arrived, Austin dragged her from the bathroom and threw her into

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

the closet and held her there against her will. When she tried to cry out, Austin held his hand over her mouth and told her to be quiet.

Based on the evidence of the victim's statements and injuries, the police obtained a search warrant for the home, and when they searched it, they found two pairs of handcuffs. The State also introduced evidence that, while the defendant was in jail on these charges, he wrote the victim a letter, stating: "[T]ell them that you [are] my girlfriend and you don't want to press charges and that you will sign an affidavit saying you was just upset with me and that I never put my hands on you."

1. In several enumerations of error, Austin challenges the sufficiency of the evidence to support his convictions.[2] When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia,* 443 U. S. 307, 318-319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State,* 273 Ga. 831, 832 (546 SE2d 524) (2001).

Austin was convicted of false imprisonment, kidnapping, and battery. The essential elements of the crime of false imprisonment are: violating the personal liberty of another, by arresting, confining or detaining a person, without legal authority. OCGA § 16-5-41 (a); *Laredo v. State,* 253 Ga. App. 155, 157 (1) (558 SE2d 742) (2002). Here, the victim testified[3] that she was held against her will, handcuffed all night long, and then shoved into a closet and held there, also against her will. The evidence was sufficient to authorize the jury to find that

---

[2] Austin does not specifically raise the general grounds. However, in errors 2 through 5, 12, and 18, he challenges the sufficiency of the evidence as it applies to his arrest warrants or he notes the inconsistencies between the testimony presented in his preliminary hearing and at trial, and he contends that witnesses lied, committed perjury, lacked credibility, or, in the case of the victim, lacked the mental capacity to testify. Because these claims of error touch upon the sufficiency of the evidence adduced at trial, we address the general grounds in an effort to do substantial justice.

[3] Austin contends the victim's testimony should be disregarded because, since she was mildly "mentally retarded," she was incompetent to testify. However, "[e]veryone is presumed competent to testify, even people who have been shown to have mental disabilities." *Lamunyon v. State,* 218 Ga. App. 782, 783 (1) (463 SE2d 365) (1995) (mentally retarded witness could appreciate the difference between truth and lie and appreciate obligation to tell the truth). In this case, there was no evidence adduced demonstrating that the victim was incompetent.

the defendant "deprived the victim of personal liberty by confining and detaining her without legal authority to do so." (Citation and footnote omitted.) *Laredo v. State*, 253 Ga. App. at 157 (1).

OCGA § 16-5-40 (a) provides that a "person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." Under Georgia law, "[t]he distance which a kidnapper abducts his victim is without legal significance[.] Only the slightest movement of the victim is required to constitute the necessary element of asportation." (Footnotes omitted.) *Boykin v. State*, 264 Ga. App. 836, 839 (1) (592 SE2d 426) (2003). In this case, the victim testified that Austin unchained her from the bathroom door and then dragged her to the closet and held her there against her will. This evidence is sufficient for the jury to find, beyond a reasonable doubt, that Austin committed the offense of kidnapping. See *Giddens v. State*, 190 Ga. App. 723, 725 (3) (380 SE2d 274) (1989) (evidence sufficient to support kidnapping when defendant pushed the victim, who was standing in front of a car door, into the driver's seat).

OCGA § 16-5-23.1 (a) provides that a person "commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another." Visible bodily harm is defined as "bodily harm capable of being perceived by a person other than the victim and may include, but is not limited to, substantially blackened eyes, substantially swollen lips or other facial or body parts, or substantial bruises to body parts." OCGA § 16-5-23.1 (b). Here, the victim testified that Austin punched her in the face and handcuffed her to a door. She and the police testified as to her visible injuries, her bruised and swollen lips and her reddened wrists. Further, the State introduced photographic evidence of the victim's injuries. Given this evidence, the jury was authorized to find, beyond a reasonable doubt, that Austin committed the offense of battery. See *Kuykendoll v. State*, 278 Ga. App. 369, 370 (1) (629 SE2d 32) (2006).

2. Austin challenges the sufficiency of the affidavits supporting his arrest warrants for the offenses of kidnapping and false imprisonment, implying that there was not enough evidence for a judge to determine independently that a crime had occurred. Pretermitting whether the arrest warrants were valid, a new trial would not be required because the sanction for an unconstitutional arrest is the exclusion of the evidence obtained as a result of that arrest. The sanction is not the suppression of the prosecution. *Lackey v. State*,

Finally, absent an objection to competence, it is not error to allow a witness to testify without first determining her competence. *Young v. State*, 122 Ga. 725 (1) (50 SE 996) (1905); see OCGA § 24-9-7 (competency to testify).

246 Ga. 331, 333 (2) (271 SE2d 478) (1980); *Ricks v. State*, 204 Ga. App. 441, 442 (1) (419 SE2d 517) (1992). Austin has not identified any evidence obtained as a result of his arrest under these warrants.

3. Austin contends his trial attorney was ineffective because he failed to challenge the admission of certain evidence, to file motions, to make objections, or to introduce allegedly exculpatory evidence. As we have held, to prevail on this claim, an appellant must prove that counsel's performance was deficient and that, but for the deficient performance, there is a reasonable likelihood that the jury would have returned a different verdict. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). "Furthermore, there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy." (Citations and punctuation omitted.) *Clay v. State*, 232 Ga. App. 656, 657 (1) (503 SE2d 560) (1998). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). Finally, in reviewing a trial court's determination of a claim of ineffective assistance of counsel, we defer to the court's factual findings, which are upheld unless clearly erroneous; we review de novo the court's legal conclusions. *Bales v. State*, 277 Ga. 713, 715 (2) (594 SE2d 644) (2004).

(a) Austin contends the prosecutor made an improper remark during his opening statement when he said: "A meal ticket and a slave, that's . . . exactly how [Austin] felt about the victim in this case." In its opening statement, the prosecution may state what it intends to prove. *Highfield v. State*, 246 Ga. 478, 482 (3) (272 SE2d 62) (1980). "The proper range of comment by counsel is a matter within the discretion of the trial court." (Citation omitted.) *Mathis v. State*, 171 Ga. App. 620, 621 (2) (320 SE2d 861) (1984). "In Georgia, good faith is the general test in passing upon the preliminary statement of the prosecutor to the jury as to what he expects to prove in a criminal case." (Citation and punctuation omitted.) *Parker v. State*, 277 Ga. 439, 440 (2) (588 SE2d 683) (2003). We have held that the prosecutor may state what he expects in good faith a witness will testify to if the witness is going to testify. *Hall v. State*, 138 Ga. App. 20 (1) (225 SE2d 705) (1976) (physical precedent only). Here, a witness testified that Austin regarded the victim as his slave, and several witnesses testified that Austin cashed the victim's disability checks and used the funds. Because the prosecutor's statement was fairly based upon witness testimony, it was not improper. Id. And since it was not improper, counsel cannot be considered deficient for failing to object. See *Henry v. State*, 279 Ga. 615, 617 (3) (619 SE2d 609) (2005).

(b) Austin contends his counsel should have moved to suppress evidence obtained as a result of the police officer's entry into and later search of his home.[4] However, as we have held,

> the mere failure to file a suppression motion does not constitute per se ineffective assistance of counsel. . . . For example, it is not deficient to fail to file a motion which is frivolous. Even if a deficiency did result from trial counsel's failure to file a motion to suppress, [Austin's] burden is to make a strong showing that if trial counsel had made a motion to suppress, the damaging evidence would have been suppressed.

(Citations and punctuation omitted.) *Edwards v. State*, 224 Ga. App. 332, 334 (3) (a) (480 SE2d 246) (1997). In this case, the police were authorized to enter the home based upon exigent circumstances. "[A]n exigent circumstance which [justifies] the warrantless entry [into] a private home [includes] the officer's reasonable belief that such action is a necessary response on his part to an emergency situation." *Coker v. State*, 164 Ga. App. 493, 496 (5) (297 SE2d 68) (1982). In this case, the police received an "endangered person" 911 call and they believed that Austin was in violation of a no-contact bond, that he had threatened the victim with violence, and that the victim and Austin were inside the house but were not responding to their knocks. Given these facts, exigent circumstances existed which supported the warrantless entry into the home. See id. Further, when the officers returned to the home later to search it for handcuffs, they had a valid warrant. The search warrant was valid because it was supported by the victim's account of having been handcuffed to the door by Austin and by the physical evidence of injuries to her wrists. See *Filix v. State*, 264 Ga. App. 580, 581-582 (2) (591 SE2d 468) (2003) (the search warrant was obtained on the basis of information gathered from the victim's description of the robber and the fingerprint evidence identifying the defendant). Because the initial entry into and later search of the home were both lawful, counsel was not deficient for failing to file a motion or motions to suppress. *Edwards v. State*, 224 Ga. App. at 334 (3) (a).

(c) Austin contends his attorney was ineffective for failing to move to sever the aggravated stalking[5] count from the indictment. However, the aggravated stalking count was part of the same conduct

---

[4] For the sake of argument, we assume that the victim's home was also the defendant's home and that he had standing to contest the search. The evidence on this issue, however, is unclear.

[5] The jury acquitted Austin of this charge.

or series of events that occurred on August 30. Under such circumstances, the offenses were properly joined. See *Brown v. State*, 230 Ga. App. 190, 190-191 (1) (495 SE2d 858) (1998). Further, Austin has not shown that the charges and evidence were so complex that, in the interests of justice, severance was warranted. See *Dingler v. State*, 233 Ga. 462 (211 SE2d 752) (1975). Austin has failed to show that counsel was deficient in this respect.

(d) Austin argues that his attorney should have subpoenaed his cell phone records to impeach the testimony of one of the arresting officers. Austin has not explained how these records would have impeached the officer or how they would have been relevant to any issue in the case. Consequently Austin has failed to show that his attorney was deficient.

(e) Austin contends his attorney was ineffective for failing to introduce into evidence a letter[6] the victim allegedly wrote to him on the day he was arrested. Counsel testified at the motion for new trial hearing that "I don't see how that letter had any bearing on the defense. . . . [T]he fact that she's sorry you're locked up just doesn't cut it in terms of the defense." Because Austin has not shown how the letter would have helped his defense, he has not shown that counsel was deficient for failing to tender it at trial.

4. Austin contends the court should not have admitted the testimony of the landlord's daughter, who testified as to certain statements Austin made to her during their telephone conversation. Trial counsel objected to this testimony. The trial court did not err in allowing the testimony because voluntary, noncustodial, incriminating statements of defendants are admissible through the testimony of anyone who heard them. *Hardeman v. State*, 180 Ga. App. 632, 633-634 (2) (349 SE2d 839) (1986).

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED JUNE 6, 2007 —
RECONSIDERATION DENIED JUNE 26, 2007 — 

Shon R. Austin, *pro se.*

---

[6] It does not appear that this letter was made a part of the record below, either at trial or during the motion for new trial hearing. Austin filed a motion requesting this Court to order his trial attorney to produce this letter. However, it is not the function of this Court to receive new evidence. This Court exists solely as a reviewing court, with no original jurisdiction, for the purpose of correcting errors of law in lower tribunals. See, e.g., *Ga. Dept. of Natural Resources v. Coweta County*, 261 Ga. 484 (405 SE2d 470) (1991); *Harmon v. Southern R. Co.*, 123 Ga. App. 309 (2) (180 SE2d 604) (1971). Consequently, the motion is denied.

*Kelly R. Burke, District Attorney, Jason E. Ashford, Timothy M. Marlow, Assistant District Attorneys*, for appellee.